ZOTTOLI, J.
This is an action of contract or tort to recover for damage to the plaintiff’s automobile. The plaintiff’s declaration contains two counts. The first count in contract alleges, in substance, that the defendant, on February 26, 1951, breached an agreement with the plaintiff to safely and securely store the plaintiff’s automobile. The second count alleges damage to the plaintiff’s automobile by reason of the negligence of the defendant. The defendant’s answer, in substance, is a general denial and further, if any *[147] negligent acts were committed they were not done by a person for whose conduct the defendant was legally responsible and that the agreement was not breached by the defendant or by one for whose acts the defendant was legally responsible.
At the trial the following evidence was introduced:
The plaintiff testified that he was the owner of a 1950 Pontiac Sedan, which he had bought new of the Russell Pontiac Co., Inc., in West Roxbury, in February, 1950; that he had been a regular daily patron of the defendant’s garage in Bowdoin Square, Boston, for about a year; that on February 26, 1951, about 2:00 p. m., he drove his car into the defendant’s garage, and according to his usual practice drove it into a parking bay on the third floor of the garage, facing the wall, in such a position that it would have to be backed up to move it to a different location. He left the car and returned to his office nearby. At the time he left the car it was in good operating condition and was undamaged, and had been driven about 15,500 miles. He had taken the car in the morning of the same day to the Russell Pontiac Co. for repairs; it was getting water in the crank case. He had waited while this work was being done. He then took the car and drove it into his shop at 110 Tremont St., leaving the car on the street for about five minutes while he went into his shop, and then returned and drove directly to the defendant’s garage in Bowdoin Square. He had driven the car both in forward and reverse gears and the car drove all right and was otherwise undamaged. He left the car and returned to his shop.
About an hour after leaving the car he received a telephone call from Mr. Race, the regular attendant on the third floor of the garage, where he had left his car. Race told him that something was wrong with the transmission linkage of the car and that it would not drive forward or backward; that he had spoken to the mechanic, who said it would only cost $1.00 or $2.00 to repair. The plaintiff told Race to have the mechanic fix it. A little later that afternoon Race called the plaintiff again on the telephone and advised him that the trouble with the car was in the transmission and not in the linkage, and that the garage did not repair transmissions. The plaintiff then told him that he would have the Russell Pontiac people fix the *[148] car and would arrange to have the car taken by them that afternoon or the following morning.
The following morning the plaintiff arrived at the defendant’s garage about 8 o’clock and found his car in the service department on the first floor. He tried the gear shift and found it was very loose and moved in a full arc instead of staying in the various speed notches where it was set. He also saw that the right front bumper grid work and fender were smashed in at an angle of 45 degrees. The damage began on the right front corner and extended about lj4 feet along the bumper, which was pushed in 6 or 7 inches; the grill, bars were all pushed in on the right side of the grill and the fender and bumper were jammed down almost to the front right tire. The top of the fender near the middle wasbuclded upward. This damage had not been on the car when he left it the previous day.
Plaintiff then went to the manager’s office and waited until the manager arrived. When the manager, Mr. Been, arrived about 9:15 o’clock, the plaintiff’s car was then on the street at the curb in front of the defendant’s garage, behind the tow car brought there by the Russell Pontiac Co. The plaintiff pointed out the damage to the front end of the car and spoke of the damage to the transmission, and told the manager that the damage had been done while the car was in the garage. The manager told the plaintiff that if the damage to the front end had occurred while the car was in the garage the garage would repair the damage, but would like to do it in their own workshop. The plaintiff’s car was then towed away by the Russell Pontiac Co. From the time he left the car in the afternoon of February 26 until he saw the car the next morning he had not taken the car out of the garage nor authorized anyone to take it out.
That the fair market value of his car when he left it in the afternoon was $1900. and the value when he saw the car the next morning was $1700. That the cost of repairs was $183.65, $54.95 for repairs to the transmission and $128.70 for repairs to the front end of the car.
Mr. Lee Russell, president of the Russell Pontiac Co., a qualified expert on transmissions and automobiles generally, testified that the plaintiff’s car had a *[149] hydromatic drive; that he inspected the car when it was towed in from the Bowdoin Square Garage; that he had to take down the transmission to see what the trouble was; that he found that there was a unit broken and had to be replaced, and that they had to replace a thermostat; that the trouble with the transmission was the broken parts and that these parts could only be broken by a severe blow or force such as could cause the damage to the front right bumper, grille and fender; that the car had been checked the previous day at their place of business, had been road checked and that the transmission was in perfect condition, and that there was no other damage to the car.
Mr. Race testified that he was the service foreman on the third floor of the defendant’s garage; that he had been employed by the garage for about 14 years; that he remembered the plaintiff bringing his Pontiac into the garage on February 26, about 2 p.m., and saw him drive the car into the parking bay and leave it; that about fifteen minutes later he, Race, got into the car and tried to drive it. During this period of time he had been away from the third floor where the car was left for about five minutes. When he returned the car was in the same place where the plaintiff left it. He put the car into reverse but it would not move. He then put it in forward gear. It moved a couple of feet and stopped. He got out and put his shoulder to the jam of the door and pushed the car out into the aisle and 8 or 9 feet down the aisle. He then put the car in forward gear and it responded and he got the car to top of the down ramp and rolled it down to the service floor, three floors below; that when he got to the second floor he had to stop to let a car go by on the up ramp. He then put the car into forward speed and it would not respond, and he had to push the car to the down ramp and let it coast to the service floor. When he got to the service floor he asked the service manager, Mr. Wilson, to look at the car, and he pulled the hood latch and Wilson lifted the hood. Wilson examined the car. Race then got in touch with the plaintiff and told him that the service manager said that it was the shift linkage that was the matter and that it would cost approximately a dollar or two to fix it. Plaintiff told him to go ahead and have it done. He told the service manager to fix it. The service manager jacked up the car to get under it. The witness then went back to the third floor. Later he heard from the *[150] service manager and then called the plaintiff and told him that there was something else the matter and that it would cost more, and the plaintiff stated he wanted to have the Russell Pontiac Co. do the work; that he, the witness, did not run the car into anything, nor did anyone else. He saw the car the following morning approximately where he had left it on the service floor and the service manager called his attention to the damage to the right front of the car, and that the plaintiff said that this damage occurred in the garage. There was damage to the right front fender, bumper and grille, but he did not look at it closely; that when he first went to move the car on the third floor of the garage he saw no damage to the right front corner of the car; that he approached the car from the driver’s side, and that he would not see the damage from the driver’s seat.
Harold R. Bean testified that he was the manager of the garage and had held that position for about 13j4 years; that he heard of the difficulty to the plaintiff’s car the morning after the plaintiff had left the car in the garage; that the plaintiff was waiting for him when he came "to the garage and asked him to look at the car. The car was then in the street back of the tow car when the plaintiff pointed to the front end of the car; that he Bean, asked what had happened, and the plaintiff said that it had happened in the garage; that he then called Race, and Race in the plaintiff’s presence told him the story about the car not moving; after talking with Race the plaintiff went off and the Russell Pontiac Co. towed the car away; that there was no conversation that the garage was not authorized to do transmission work; that the plaintiff said he wanted the Russell Pontiac Co. to do the work; that he, the witness, did not tell the plaintiff that they would do the body work; that when plaintiff showed him the damage that he, the witness, said if they did it they would like to repair it themselves; that he knew that the plaintiff had not taken out the car after he left it at 2 o’clock of the day before.
At the close of the trial the defendant filed the following request for ruling:
The evidence, considered most favorably toward the plaintiff, is not sufficient as a matter of law to warrant a finding for the plaintiff.
*[151] The court denied the defendant’s request for ruling, and found for the plaintiff in the amount of two hundred dollars.
The defendant claims to be aggrieved by the court’s denial of the defendant’s request for ruling.
It is apparent from the above recital of the testimony that it is highly conflicting on several important points. It will serve no useful purpose to set out these inconsistencies in detail. It will suffice to point out that when the plaintiff drove the car into the garage and left it on the stall on the third floor, and before that, “he had driven the car both in forward and reverse gears and the car drove all right and was otherwise undamaged.” It also appears- in the testimony that “about an hour after leaving the car he (the plaintiff) received a telephone call from Mr. Race, the regular attendant on the third floor of the garage, where he had left his car. Race told him that something was wrong with the transmission linkage of the car and that it would not drive forward or backward.” On the other hand, the report shows that Mr. Race testified that “he was service foreman on the third floor of the defendant’s garage . . . that he saw him (the plaintiff) drive the car into the parking bay and leave it; that about fifteen minutes later he, Race, got into the car and tried to drive it. During this period of time he had been away from the third floor where the car was left for about five minutes. When he returned the car was in the same place where the plaintiff had left it. He put the car into reverse but it would not move. He then put it in forward gear. It moved a couple of feet and stopped.” Whether Mr. Race was telling the truth when he told the plaintiff over the telephone that the car “would not drive forward or backward” or later when he testified “he put the car in reverse but it would not move. He then put it in forward gear. It moved a couple of feet and stopped,” presented a question of fact for the court to decide. It is well settled that under our practice it is for the fact finding tribunal to decide just how much credence, if any, he will give to the testimony of any witness. Hill v. West End St. Ry. Co., 158 Mass. 458.
It is true that mere disbelief of evidence is not sufficient in and of itself to establish affirmative proof. Nevertheless it is also true that testimony not worthy *[152] of credence might be of such a character as to lead to the conclusion that if the transaction were honest, such testimony would not have been presented, and thus might tend to support the affirmative burden resting on the plaintiff. The defendant’s denial that its servant’s conduct was responsible for the damage to the plaintiff’s car and the contradictory testimony of the defendant’s servant could have been found by the judge to be statements made “to conceal the real facts and mislead the court.” False testimony of a party may have probative force in civil cases.
In weighing the other testimony in the case with the defendant’s testimony and conduct, the trial judge could have inferred that the defendant’s servants operated the plaintiff’s, car under such conditions as made the defendant responsible for their acts. The conduct of the defendant could be found to have probative force because of its tendency to prove consciousness of liability and an endeavor to escape from it. D’Arcangelo v. Tartar, 265 Mass. 350, 352, and see opinion by Bolster, C. J. in said case No. 101450 B.M.C. Vol. 25 A.D. 378.
Furthermore, the plaintiff’s testimony that “The manager told the plaintiff that if the damage to the front end had occurred while the car was in the garage, the garage would repair the damage . ..” was not without probative value, if believed by the trial judge. The evidence reported with the reasonable inferences to be drawn therefrom warrant a finding that the car was in the defendant’s garage when damaged. Under these circumstances the trial judge could consider the above statement by the manager of the defendant as in the nature of an admission that it admitted liability for the agent’s acts if it were shown that the damage took place within the defendant’s garage. Such a statement was not an offer of compromise, but rather an admission that the defendant was at fault when the collision took place, cf. Wiseman v. Rome, 250 Mass. 505, 506; Dennison v. Swerdlove, 250 Mass. 507, 508, 509 ; Mielke v. Dobrydnio, 244 Mass. 89, 92.
It is well established that “if anywhere in the evidence from whatever source derived” any combination of circumstances can be found from which a reasonable inference can be drawn in favor of the plaintiff, “it is immaterial how many other combinations can be found which would lead to conclusions adverse *[153] to the plaintiff. The question presented by the defendant’s request for ruling was not directed to the weight of the evidence, but whether there was any evidence viewed in the light most favorable to the plaintiff, that would support his cause of action. Kelly v. Railway Express Agency, Inc., 315 Mass. 301, 302; Phillips v. Larson, 323 Mass. 87, 90; Howes v. Kelman, Mass. (1951) A.S. 87; cf. Standard Oil Co. of N.Y. v. Malaguti, 269 Mass. 126, 129; Moss v. Old Colony Trust Co., 246 Mass. 139, 141.
Sumner W. Elton, attorney for the defendant.
Frank I. Rose, attorney for the plaintiff.
In the circumstances disclosed by the report we are of the opinion that it cannot be said as matter of law that in finding for the plaintiff the judge erred.

Report dismissed.